DOUCET, Judge.
This appeal presents the issue of whether the awards of general damages and medical expenses were adequate. These awards of the jury are the only issues before this court. After a thorough review of the record we find no manifest error. We affirm.
This is a personal injury action by Bertha F. Roussell and her husband, Eli Roussell, arising out of alleged injuries incurred by Mrs. Roussell in an automobile collision. The accident occurred on September 22, 1982. The automobile driven by Mrs. *1277 Roussell was struck from the rear by a vehicle driven by Gary Young. As the trial began, State Farm Mutual Automobile Insurance Company, the liability insurer of the Young car, admitted liability and the issues of quantum were presented to the jury.
The jury responded to the trial court’s special interrogatories as follows:
1. What damages, if any, were suffered by Bertha Roussell as a result of the accident over and above the sum of $2,952.18 which she had already received?
$ 900.00
2. What damages, if any, were suffered by Eli John Roussell as a result of the accident?
$2,918.87
A judgment was rendered accordingly.
Prior to trial, State Farm had paid to Mrs. Roussell the sum of $2,952.18 from its liability portion of its policy. The jury awarded her an additional sum of $900.00 for a total of $3,852.18. The $2,918.87 represented an award for medical expenses incurred by Mrs. Roussell.
The issue presented is whether these awards were adequate.
GENERAL DAMAGES
Following the accident Mrs. Roussell was taken to the emergency room of Lake Charles Memorial Hospital. She was examined by the emergency room doctor, given medication, released and referred to her family doctor. Mrs. Roussell stated that she was having neck pains. Eight days after the accident she consulted with Dr. Charles T. White, a family practitioner, about her neck problems. Dr. White testified that he first saw Mrs. Roussell on September 30, 1982. She was complaining of pain in the neck and upper back. He was sent a copy of the X-ray report from the hospital.
Dr. White found some limitation of motion and spasm of the cervical muscle. He prescribed pain medication. He saw her again on October 7, 1982. He stated that she had slightly improved. He continued the medication and prescribed therapy of hot packs, massages and exercise. She received approximately eight to ten of these treatments.
Dr. White next saw her on November 23, 1982. Her principal complaint at this visit was pain in the right shoulder and right sternoclavicular joint. This is the joint where the collar bone joins the breastbone. He next saw her on December 6, 1982 and her complaints were the same. He then referred her to Dr. William Akins, an orthopedic surgeon. This is the last time Dr. White saw Mrs. Roussell for this problem.
The record does not reflect that Mrs. Roussell consulted with Dr. Akins. Instead, she went to a chiropractor, Dr. Robert B. Vanbreemen, on December 31, 1982 for treatment.
Dr. Vanbreemen stated that she was complaining of neck and shoulder pain. He treated her over a period of five weeks with spinal manipulation, ultrasound, diathermy and sinosoidal current. At the end of this five weeks of treatment, he stated that she had achieved a very good improvement. She continued to complain of some pain, however, and he referred Mrs. Rous-sell to Dr. Gerald Litel, a neurosurgeon. The medical bills reflect that Dr. Litel examined her but this doctor was not called to testify.
Upon referral of her attorney, Mrs. Roussell consulted Dr. George P. Schneider, an orthopedic surgeon, on two occasions for evaluation. This physician testified that he first saw her on October 28, 1983, thirteen months after the accident. Mrs. Roussell was complaining of pain in the neck, shoulder and sternoclavicular joints. X-rays were taken of these areas. The X-rays reflected no bone injury. After further examination he felt that her problem involved soft tissue. He found crepitation in the area of the joint where the clavicle attaches to the breastbone. The area was tender upon palpation. He recommended that she continue with home treatment of hot packs. He also recommended that she *1278 not over stress the area by heavy lifting. He felt, however, that she could otherwise perform her work.
Dr. Schneider next saw Mrs. Roussell on January 26, 1984 approximately one month before trial. She told Dr. Schneider that, since her previous visit in October 1983, she had seen another physician and he had made a diagnosis of apparent spurs in the cervical area. Her complaints of pain were generally confined to the sternoclavicular area. He found the joint to be stable but noted crepitation upon movement of the arm. There was no evidence of any nerve problem. He prescribed Nalfon, a medication that is used to treat bursitis, arthritis and muscular problems. He felt that the problem could have emanated from the accident of September 22, 1982. He felt that she would recover in time but could not give a time within which this would occur.
On cross-examination, Dr. Schneider stated that his conclusion (that the condition of the sternoclavicular joint emanated from the accident) was based primarily on the history given to him by Mrs. Roussell. She told this physician that she had never had any neck injury before this particular accident. The record reveals, however, that she was involved in a rear end collision in 1979 and she filed a damage suit for injuries, including injuries to her neck. Also, excerpts from her deposition taken in that prior suit show that her complaints were pain in the neck and back. Dr. White had treated her for low back pain. In addition to Dr. White she also consulted with five other doctors in that case.
The accuracy of the history is important in determining causation, according to Dr. Schneider, especially as to a condition involving the sternoclavicular. He stated that the cause of this condition could be traumatic or non-traumatic. His comments as to the cause of the existence of crepitation or grinding in the joint is as follows:
“Q. Now, this problem about grinding in the shoulder. You mentioned that could be non-traumatic. Explain to the Jury what you mean?
A. In other words, we see a lot of patients who have these grinding — the grinding manifestations of some underlying joint problem where they had no history of injury whatsoever. It could be spontaneous. It can come on gradually. They may gradually notice the onset of grinding in a joint or a similar type of process possibly related to the development of — in arthritis or changes in the capsule of the joint or the cartilage which covers the end of the bone in a moving joint. So, it could be gradual in onset and not related to injury.”
Mrs. Roussell, 56 years old, testified that she and her husband operate a slaughter house in Lake Charles. She assists her husband in the cutting and wrapping of the meat. She stated that she didn’t work for about four months after the accident, but worked thereafter with pain. She stated that she was still having pain at the time of trial. She stated that she refrains from heavy work. She stated that the sterno-clavicular joint area is the area of pain. Eli Roussell, her husband, and a friend who helped in the slaughter house also stated that Mrs. Roussell was not able to perform heavy work as she had done prior to the accident.
The jury awarded Mrs. Roussell $900.00 general damages in addition to the $2,952.18 previously paid to her by State Farm. Mrs. Roussell’s credibility was brought into question when she first denied that she had received a previous neck injury, but admitted prior neck problems when confronted with her deposition taken in the 1980 suit for damages. In view of the circumstances, the jury could have concluded that the crepitation or grinding in the sternoclavicular joint was not related to trauma but was an arthritic condition occurring in this 55 year old woman who had performed heavy work over a number of *1279 years. The circumstances of this case would justify such a conclusion. The jury apparently felt that the injury received by Mrs. Roussell in this accident was primarily a neck injury from which she recovered after a short time. Such conclusions would not be manifest error under the circumstances of this case.
A review court should not disturb the trier of fact’s damage award absent a determination that the factfinder abused its discretion under the facts of the particular case. Benson v. Seagraves, 445 So.2d 187 (La.App. 3rd Cir. 1984), writ denied, 447 So.2d 1071 (La.1984). We find no such abuse of discretion in this award of general damages.
AWARD OF MEDICAL EXPENSES TO ELI ROUSSELL
Roussell contends that the jury’s award for medical expenses was inadequate by the sum of $472.09. Medical bills were introduced into evidence which total the sum of $3,390.96. The jury awarded $2,918.87 or a difference of $472.09.
After the jury retired for deliberations, it requested to see exhibit P-1 which was a globo offering of the medical expenses along with other documents. One of these documents, dated October 27, 1982, reflects payment by State Farm of $472.09 for medical expenses. These expenses included ambulance services, hospital expenses, physician’s bill and drugs. The jury could have noted this and deducted the $472.09 from the total of $3,390.96. Further, under the circumstances, the jury could have concluded that some of the medical expenses were not related to accident injury. We find no manifest error under either conclusion.
For these reasons the judgment of the trial court is affirmed. The costs of this appeal shall be paid by plaintiffs-appellants.
AFFIRMED.